No. 679          July 15, 2026          571

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TIMOTHY DANIEL LAMPKE,
*Defendant-Appellant.*

Lane County Circuit Court
23CR27391; A185369

Debra E. Velure, Judge.

Argued and submitted June 16, 2026.

Jordan Duhe Willetts argued the cause for appellant. Also on the briefs were Duhe Willetts Law and Lindsey Burrows. Also on the reply brief was Burrows Appellate Law, LLC.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Interim Deputy Attorney General.

Before Tookey, Presiding Judge, Kamins, Judge, and Kistler, Senior Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Defendant appeals from a judgment of conviction for failure to perform duties of a driver to a seriously injured person. While defendant was driving on a two-lane highway, a Buick traveling in the opposite direction crossed the center line, sideswiping defendant's car. The Buick continued turning into defendant's lane and was T-boned by a third car. After the second impact, the Buick caught fire, and the Buick's driver died at the scene. Defendant left the scene after the crash. On appeal, defendant raises four assignments of error, challenging the trial court's denial of his motion to suppress evidence derived from a warrantless search of his car, the trial court's denial of his request for two jury instructions, and the trial court's exclusion of defendant's testimony about a prior traumatic experience. We affirm.

*First Assignment of Error.* In defendant's first assignment of error, he contends that the trial court erred by denying his motion to suppress evidence derived from a warrantless search of his vehicle at the scene of the accident. Below, the court determined that the warrantless search was reasonable under Article I, section 9, of the Oregon Constitution because (1) defendant abandoned any protected interest in the vehicle by leaving it on the side of the road, and (2) there were exigent circumstances that existed at the time of the search that justified the search. We agree with the trial court that exigent circumstances existed, which obviates the need to address whether defendant abandoned his car. We review a trial court's denial of a motion to suppress for legal error and are bound by the trial court's factual findings if there is evidence to support them. *State v. Hawthorne*, 316 Or App 487, 500, 504 P3d 1185 (2021), *rev den*, 369 Or 856 (2022).

Under Article I, section 9, warrantless searches are *per se* unreasonable unless an established exception applies. *State v. Bridewell*, 306 Or 231, 235, 759 P2d 1054 (1988). One exception to the warrant requirement occurs when law enforcement have probable cause and exigent circumstances exist, meaning circumstances require "prompt responsive action by police officers" including "to prevent danger to life

\* \* \* or to forestall a suspect's escape \* \* \*." *State v. McCarthy*, 369 Or 129, 142, 501 P3d 478 (2021) (internal quotation marks omitted).

We agree, and defendant does not dispute, that police had probable cause for the search based on the three-car collision with one fatality and witness reports that defendant had fled. It is also undisputed that the police had probable cause to believe that they would find evidence of defendant's identity in the car.

Below, the state argued, and the trial court agreed, that exigent circumstances existed due to the urgency of pursuing a fleeing suspect. On the day of the accident, investigating officers learned from witnesses that defendant had fled the scene on foot. In an effort to locate defendant, officers checked the registration for the vehicle but found no current registration. An officer then searched the car in order to find identifying information. The officer discovered receipts from recent purchases, but the police did not continue investigating until the next day. The receipts enabled police to identify defendant.

Those facts amount to exigent circumstances. At the time of the search, defendant had already fled, and other avenues of quick identification—interviewing witnesses and checking the car's registration—had proved unsuccessful. Although a little over an hour had passed between defendant's leaving the scene and the search, the police's pursuit of other methods of identifying defendant and the chaotic nature of the accident scene explain the delay without lessening the urgency of the investigation. *See State v. Snow*, 337 Or 219, 224, 94 P3d 872 (2004) ("[T]he officers' graduated and appropriate actions in searching the area around defendant's car before searching the car for evidence of identity does not undercut the state's claim of exigency."). Police reasonably believed that defendant was fleeing, and the situation required quick action to allow police to identify him to potentially prevent his escape. *See id.* (concluding officer's need to "forestall a suspect's escape" allowing warrantless search of defendant's car for identification after the defendant fled from police to avoid a traffic stop, parked his car, and fled on foot fell "squarely within the exigent

circumstances exception to the warrant requirement"); *see also State v. Crook*, 93 Or App 509, 512, 762 P2d 1062 (1988) (determining no exigent circumstances existed to allow the search of an unoccupied vehicle to identify a fleeing suspect where police were able to secure the car while a warrant was obtained, police already had a description of the suspect, and no information readily obtainable from the car was likely to aid in the immediate search).

Defendant contends that the hour gap between the collision and search and the delay in following up on information discovered during the search indicates that there were not exigent circumstances. As to the one-hour gap between the accident and the search, the circumstances here—securing the scene and pursuing other means of locating defendant—explain that gap. Regarding the delay in following up on leads discovered from the search, we consider "the reasonableness of the officers' actions at the time they took them in response to exigency ***." *Snow*, 337 Or at 225. As discussed above, at the time of the search, officers' actions were consistent with exigent circumstances, given the need to quickly locate defendant to prevent his continued escape in the context of the fatal accident. We understand from the record that officers were responding to the accident scene and that the discovered leads were not useful in the immediate search for defendant. Given that context, the delay in pursuing those leads does not lessen the exigency that existed at the time of the search. *See id*. at 224 (determining delay in locating defendant after search did not undermine that exigent circumstances existed at the time of the search).

Defendant also contends that the ability to secure the car while a warrant was obtained rendered the circumstances less exigent. However, the ability to secure the car would not prevent defendant's continued escape and therefore, would not have lessened the exigency of the search. *See State v. Sanders*, 233 Or App 373, 379, 226 P3d 82 (2010), *rev den*, 350 Or 571 (2011) (determining that police's ability to secure the search area did not lessen exigency where that would not prevent the destruction of evidence or defendant's escape).

*Second and Third Assignments of Error.* In defendant's second and third assignments of error, he argues that the trial court erred by refusing to give defendant's requested jury instructions:

"[22.]   A collision is any occasion in which a driver's vehicle collides with or strikes against another object causing damage.

"[23.]   If you find that there was more than one collision, and that [defendant] was only involved in one of those collisions, in order to find that [defendant] was involved in a collision that resulted in death or injury, you must find that the collision he was involved in is the one that resulted in the death or injury."

"We review a trial court's failure to give a requested jury instruction for errors of law." *State v. Ashkins*, 357 Or 642, 648, 357 P3d 490 (2015). An instruction is appropriate if it correctly states the law and is supported by evidence in the record, when the evidence is viewed in the light most favorable to the party requesting the instruction. *Id*. "A trial court, however, is not required to give a requested instruction if another instruction adequately addresses the issue." *Id*.

Regarding the first jury instruction, "[g]enerally, words of common usage need not be defined for the jury." *State v. McDonnell*, 313 Or 478, 497, 837 P2d 941 (1992). The term "collision" is a word of common usage, and therefore, the trial court did not err by refusing to instruct the jury as to its definition.

Defendant contends that a definition of collision was nonetheless necessary to enable the jury to determine whether the events at issue amounted to one or two collisions, and therefore to understand defendant's argument that the second collision, not the first, had caused the death. However, defendant's proposed definition, taken from *State v. Parker*, 299 Or 534, 542, 704 P2d 1144 (1985) and *State v. Foote*, 154 Or App 227, 232, 704 P2d 1144 (1985), reflects the common usage of "collision," and as such, does not clarify any potential confusion. *See id*. (relying on dictionary definition of "collision" to define the term as used in ORS 811.700); *cf. State v. Roberts*, 293 Or App 340, 347, 427 P3d 1130 (2018)

(determining the trial court erred in not giving defendant's requested jury instruction where the dictionary definition of the term did not capture the statutory meaning of the term).

The second requested jury instruction is not clearly a correct statement of law and therefore the trial court properly rejected it. *See State v. Beagley*, 257 Or App 220, 226, 305 P3d 147 (2013) (determining trial court did not err in rejecting requested jury instruction that did not correctly state the law). Oregon criminal statutes generally require only that defendant's culpable conduct was the "cause-in-fact" of the statutory result rather than the proximate cause. *State v. Turnidge (S059155)*, 359 Or 364, 477, 374 P3d 853 (2016), *cert den*, 580 US 1070 (2017). The statute at issue here, ORS 811.705(1), requires that "the driver's vehicle has been in a collision that results in injury or death to a person" for culpability. That only requires that defendant is involved in *a* collision that results in injury or death, meaning that the collision defendant is involved in is a cause-in-fact of the injury or death. By contrast, the requested instruction requires "that the collision [defendant] was involved in is *the one* that resulted in the death or injury." Use of "the one" implies that the collision must be the *proximate cause* of the injury or death, not just the cause-in-fact. *See id*. at 471 (distinguishing between actual cause and proximate cause with proximate cause requiring "sufficient connection" between the conduct and result to allow for liability or responsibility for harm). Even if that implication was not intended, the instruction carries the risk of confusing the jury.

Regardless, the issue of causation was adequately addressed by another instruction. The trial court instructed the jury that conviction required a finding that defendant "was a driver of a vehicle involved in a collision that resulted in death to any person." Additional clarification of the two collisions that comprised the accident was unnecessary.

Defendant contends that such an instruction was necessary because the parties presented conflicting evidence regarding whether the first collision was a but-for cause of the second collision. Because of the conflicting argument, defendant contends that it was necessary for jury instructions regarding causation to clearly distinguish between

the first and second collision in this case. In addition, defendant argues that the two collisions created the possibility of jury confusion regarding causation, as evidenced by the state's rebuttal argument conflating the collisions into a single crash. However, the provided instructions adequately addressed that the death or injury must be the result of the collision *in which defendant was involved*, and therefore, adequately addressed the issue of causation. *See State v. Leers*, 316 Or App 762, 770, 502 P3d 1130, *rev den*, 369 Or 733 (2022) (jury instruction properly excluded where other court instructions adequately addressed the issue and the requested instructions posed a risk of confusing the jury).

*Fourth Assignment of Error.* In defendant's fourth assignment of error, he contends that the trial court erred by sustaining the prosecutor's objection as to the relevance of his testimony about a prior traumatic experience, similar to the collision at issue, that affected his mental state and memory. We review whether evidence is relevant under OEC 401 and 402 for legal error. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. Defendant contends that the testimony regarding the prior experience impacted whether defendant acted with the requisite mental state.

Failure to perform duties of a driver to a seriously injured person requires a person to act with criminal negligence with respect to whether a person was seriously injured. *State v. Hamlett*, 235 Or App 72, 80, 230 P3d 92 (2010). Criminal negligence is an objective standard, and "for crimes that arise from a defendant's driving, the defendant's failure to be aware of the risk must constitute a gross deviation from the degree of care that a reasonable driver would observe in the situation." *State v. Fruitts*, 290 Or App 222, 228, 414 P3d 881, *rev den*, 363 Or 119 (2018). An objective reasonable person standard does not take into account a defendant's unique history, mental characteristics or personal perceptions. *See State v. Oneill*, 256 Or App 537, 544, 303 P3d 944, *rev den*, 354 Or 342 (2013) (objective reasonable

person standard for choice-of-evils defense does not consider "unique history or mental characteristics" of a particular defendant); *see also State v. Strickland*, 303 Or App 240, 244, 436 P3d 537, *rev den*, 366 Or 827 (2020), *cert den*, ___ US ___, 141 S Ct 1517 (2021) (determining the assessment of objective reasonable person standard in self-defense context does not account for defendant's "personal perceptions" or "past experience"). While evidence of "a qualifying mental disorder," including symptoms like defendant's here, is relevant to determining whether a defendant had an intentional, knowing, or reckless mental state, it is not relevant to determining if a defendant acted with criminal negligence. *See State v. Nebert*, 244 Or App 80, 86, 260 P3d 559 (2011) (determining evidence of a mental disorder or defect was wrongly excluded where the required mental state "include[d] a subjective component that may be affected by a mental disease or defect," referencing recklessness, knowledge, or intent).

Accordingly, the trial court did not err by sustaining the state's relevance objection to defendant's proposed testimony.

Affirmed.